## MONA T. SLACK *v.* BRENDA B. GREENE
## (SC 18038)

Norcott, Palmer, Zarella, Schaller and Sferrazza, Js.*

* This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued April 21, 2008—officially released December 29, 2009

*Aaron S. Bayer,* with whom was *Aaron D. Singer,* for the appellant (defendant).

*Peter M. Ryan,* for the appellee (plaintiff).

*Opinion*

PALMER, J. The defendant, Brenda B. Greene, appeals from the judgment of the trial court rendered in favor of the plaintiff, Mona T. Slack, declaring that

the plaintiff had acquired a prescriptive easement over a paved, sixteen foot right-of-way located on the defendant's property for purposes of ingress to and egress from her home. The defendant claims that the evidence was insufficient to support the trial court's finding that the plaintiff had established all of the elements of a prescriptive easement. We reject the defendant's claim and, accordingly, affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following relevant facts. "The disputed area . . . is a paved right-of-way that intersects with Runkenhage Road in the town of Darien. It is sixteen feet wide and passes through the defendant's property at [10] Runkenhage Road in a southwesterly direction for 182.34 feet. It then makes a sharp turn to the southeast for another 106.57 feet, where it ends at the entrance to 12 Runkenhage Road. . . . The plaintiff, [who owns the] property at 6 Runkenhage Road, and the defendant share a property line [along] the first 160 feet [of the right-of-way] from Runkenhage Road. Between the right-of-way and the shared property line is approximately five feet of property owned by the defendant. The shared property line runs fairly parallel to the right-of-way. At the end of the plaintiff's property line is a driveway [that] extends from the right-of-way, over five feet of the defendant's property and into the plaintiff's property. Abutting the driveway to the southeast is property at 10 Runkenhage Road. . . . The [plaintiff's] driveway is clearly delineated. . . . It can reasonably be deduced from measurements . . . that the driveway is approximately eleven to twelve feet wide as it passes over the defendant's property.

"The plaintiff[1] and her then husband purchased underdeveloped property at 6 Runkenhage Road in 1958

---

[1] The plaintiff was approximately eight-one years of age when she commenced this action against the defendant.

from Marguerite Tjader Harris, [the plaintiff's] aunt by marriage. The plaintiff constructed a home with a driveway accessible from Runkenhage Road on the northwest side of the property and from the defendant's right-of-way abutting the southwest side of the property. The certificate of occupancy for 6 Runkenhage [Road] was issued on July 2, 1959. A proposed access to the right-of-way . . . was moved farther to the southwest during construction so as to be opposite the plaintiff's garage. The plaintiff held title jointly with her husband until their divorce. Since then, she has held title alone.

"For its entire length, from Runkenhage Road to the right-of-way, the plaintiff's driveway appears to be uniformly covered in crushed stone. The point where the driveway crosses the defendant's property and intersects with the right-of-way is clearly visible from the defendant's property.

"The defendant purchased her property including the [sixteen foot] right-of-way at 10 Runkenhage Road from Brian [Murphy] and Veronica Murphy on July 13, 2000. The Murphys purchased title from Lucy Herberick on April 1, 1980. The predecessors in title to the Herbericks[2] were David [Moore] and Marion Moore, who purchased the property from Olive Nicholls Ward on June 1, 1953. . . . Ward was the plaintiff's stepgrandmother.

"Adjoining the plaintiff's property to the southwest is 8 Runkenhage Road, presently owned by David [Wilson] and Sandra Wilson. Further to the southwest and adjoining the [Wilsons'] property is 12 Runkenhage Road, [which is] presently [owned] by Kevin [Keating] and Nancy Keating. The only access to properties at [8, 10 and 12 Runkenhage Road] is via the right-of-way owned by the defendant. The Wilsons and Keatings have

[2] Bernard Herberick owned the property along with Lucy Herberick before the Murphys but died in 1979, leaving his interest in the property to Lucy Herberick.

deeded access over the right-of-way and contribute toward its upkeep . . . . The plaintiff does not have deeded access over the right-of-way and does not contribute to its upkeep.

"The plaintiff grew up in the general area of Runkenhage Road, visiting family at each of the three homes extant [on the road] at that time or actually residing there for periods of time. She used the right-of-way to gain access to the residences. The plaintiff has used the right-of-way since 1959 to gain easier access to the garage on her property. Guests and invitees have also used the right-of-way to enter and exit her property.

"The plaintiff's nephew, Michael Tjader, resided with his family and the plaintiff at 6 Runkenhage Road for several years in his youth. Tjader, his father, the plaintiff and her [former] husband, and their guests and invitees used the right-of-way as a means of egress [from] and ingress to the plaintiff's property. Tjader rode his bicycle on the right-of-way, and when he received his [driver's] license, he drove over the right-of-way as a means of egress [from] and ingress to the plaintiff's property. In Tjader's lifetime, the driveway from the right-of-way was always located where it is at [the] present [time].

"Malcom Hall, who resided at 8 Runkenhage Road from 1985 to 1987, observed the plaintiff's use of her driveway and the right-of-way for both ingress [to] and egress [from] her driveway and garage on many occasions.

"Kevin Keating, who currently resides at 12 Runkenhage Road, has observed the plaintiff use the right-of-way in connection with her driveway.

"David Wilson, who has resided at the adjoining property at 8 Runkenhage Road, has observed the plaintiff, her guests, invitees and trades people using the right-of-way for both ingress [to] and egress [from] the plaintiff's

property. In addition, [Wilson] has, on occasion, been granted permission from the plaintiff to allow his family and their guests to park on her driveway and access way leading to the right-of-way when his own adjoining driveway was filled with cars.

"In 2005, the defendant constructed a number of concrete pillars abutting the right-of-way and in between the right-of-way and the plaintiff's property line. One pillar is constructed immediately abutting the plaintiff's access way to her driveway on the southeasterly side. . . . The pillar's location makes it difficult if not near impossible for the plaintiff to make a right turn with her automobile. As a result, the plaintiff asked Kevin Keating for his permission to use his driveway as a turnaround so she could approach the access way from the opposite direction." (Citations omitted.)

The plaintiff commenced the present action, alleging that she had used and enjoyed the right-of-way for "all purposes of passage of persons and vehicles for more than fifteen years before the commencement of this action, and [that] the use and enjoyment had been open, visible, continuous, uninterrupted and under a claim of right . . . ." The plaintiff sought a judgment declaring that she had acquired an easement by prescription over the right-of-way for purposes of ingress to and egress from her driveway, as well as temporary and permanent injunctions prohibiting the defendant from building, constructing or maintaining any improvement of any kind in or around the area of the right-of-way that would interfere with her use and enjoyment thereof.[3]

The case was tried to the court. At trial, the plaintiff testified that she, the members of her family and their invitees had used the right-of-way as a means of ingress to and egress from her home since 1959, the year that

---

[3] The plaintiff originally sought damages but subsequently withdrew that claim.

she and her former husband built their residence on Runkenhage Road. The plaintiff further testified that it is her practice, when she leaves her home, to exit her driveway onto Runkenhage Road and to return using the right-of-way because it permits her to drive straight into her garage, without having to execute a turn. The plaintiff also introduced into evidence several photographs depicting the intersection of her driveway and the right-of-way. These photographs depicted that intersection from several vantage points, including its proximity to the garage. In addition, the plaintiff introduced a copy of the certificate of occupancy that had been issued for her residence in 1959. Attached to that document was a 1958 survey and site plan of the property depicting a driveway accessible from both Runkenhage Road and from what is now the defendant's right-of-way. Both the certificate of occupancy and the site plan had been filed with the building department of the town of Darien in 1959.

The defendant sought to demonstrate that the plaintiff's use of the right-of-way always had been permissive rather than adverse and under a claim of right. The defendant relied primarily on evidence establishing that members of the plaintiff's family previously had owned the defendant's property and that the plaintiff had grown up near that property and, for a time when she was a child, actually had resided on it. The defendant maintained that this evidence indicated that the plaintiff had used the right-of-way with the permission of her family members and not under a claim of right.[4]

In a memorandum of decision filed by the trial court following the conclusion of the trial, the court found that the plaintiff "established by a fair preponderance

[4] The defendant also asserted that the plaintiff was barred by the doctrine of laches from claiming a prescriptive easement over the right-of-way. The trial court rejected this claim, however, and, on appeal, the defendant does not challenge that aspect of the court's decision.

of the evidence that, between 1959 and 1974, she and her guests and invitees [had] used the disputed area as a right-of-way to gain entry [to] and to exit her property, and that [their] use was 'open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.' " After evaluating the plaintiff's demeanor and that of the witnesses who testified on her behalf, as well as the "quality of their testimony," the court found them "to be highly . . . credible . . . ." The court further stated that their testimony was entitled to "great weight . . . ." In contrast, the court was "unable to give much if any weight" to the testimony of the defendant's primary witness, Veronica Murphy, one of the previous owners of the defendant's property, who had "testified to conversations with the plaintiff between 1980 and 2000 regarding permission to use the right-of-way." As a result, the trial court expressly found that the defendant had failed to establish that those conversations had, in fact, occurred.

With respect to the defendant's claim that the plaintiff's use of the right-of-way was permissive rather than adverse because the plaintiff had used the right-of-way when it was owned by members of her family, the trial court found that the plaintiff's "prior use of the disputed area as a guest and as a tenant does not alter the fact that, in the years 1958 and 1959, when the plaintiff purchased her property and constructed a driveway over the defendant's property, nonrelatives held title to property at [10] Runkenhage [Road], including the right-of-way, and had done so since 1953." The court further found that "no evidence was presented at trial [demonstrating] that an objection, written or otherwise, was made to the plaintiff's use [of the right-of-way] during the [prescriptive] period." Instead, the court credited the plaintiff's testimony that "no one questioned her use of the right-of-way from 1959 until the defendant began construction of the pillars in 2005." The court

also found, in rejecting the defendant's laches claim; see footnote 4 of this opinion; that, if the defendant had engaged in even the most "cursory examination of the property line of [10] Runkenhage Road prior to her purchase" of the property, she would have observed that the plaintiff's driveway "spills out onto the right-of-way," a fact that would have afforded the defendant "fair and patently obvious notice [that] there was use of the right-of-way [by the plaintiff in a manner] other than that expressly provided [in the] deed."

In light of these findings, the trial court rendered judgment declaring that the plaintiff has a legal right and title to the use and enjoyment of the right-of-way. The court also granted a permanent injunction barring the defendant from constructing any obstacle that would interfere with the plaintiff's use and enjoyment of her easement. Finally, the court ordered the defendant to remove the particular concrete pillar that was obstructing the plaintiff's use of the easement. This appeal followed.[5]

We begin our analysis with the standard of review. "Whether a right of way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered." *Klein* v. *DeRosa*, 137 Conn. 586, 589, 79 A.2d 773 (1951). "When the factual basis of a trial court's decision [regarding the existence of a prescriptive easement] is challenged, our function is to determine whether, in light of the pleadings and evidence in the whole record,

---

[5] The defendant appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We note that, after the defendant filed her appeal, the trial court granted the plaintiff's motion to open the judgment for the limited purpose of amending the trial court's memorandum of decision to include a description of the boundaries of the easement. The defendant thereafter filed an amended appeal.

these findings of fact are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 533, 932 A.2d 382 (2007).

"[General Statutes §] 47-37 provides for the acquisition of an easement by adverse use, or prescription. That section provides: No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years. In applying that section, this court repeatedly has explained that [a] party claiming to have acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. . . . The purpose of the open and visible requirement is to give the owner of the servient land knowledge and full opportunity to assert his own rights. . . . To satisfy this requirement, the adverse use must be made in such a way that a reasonably diligent owner would learn of its existence, nature, and extent. Open generally means that the use is not made in secret or stealthily. It may also mean that it is visible or apparent. . . . An openly visible and apparent use satisfies the requirement even if the neighbors have no actual knowledge of it. A use that is not open but is so widely known in the community that the owner should be aware of it also satisfies the requirement. . . . Concealed . . . usage cannot serve as the basis [for] a prescriptive claim because

it does not put the landowner on notice." (Citations omitted; internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 576–77, 800 A.2d 1102 (2002).

"The requirement that the [use] must be exercised under a claim of right does not necessitate proof of a claim actually made and brought to the attention of the owner . . . . It means nothing more than a [use] 'as of right,' that is, without recognition of the right of the landowner, and that phraseology more accurately describes it than to say that it must be 'under a claim of right.' . . . [When] there is no proof of an express permission from the owner of the servient estate, on the one hand, or of an express claim of right by the person or persons using the way, on the other, the character of the [use], whether adverse or permissive, can be determined as an inference from the circumstances of the parties and the nature of the [use]." (Citation omitted.) *Gregory's, Inc.* v. *Baltim*, 142 Conn. 296, 299–300, 113 A.2d 588 (1955). "A trier has a wide latitude in drawing an inference that a [use] was under a claim of right." Id., 300.

With these principles in mind, we turn to the defendant's claim that the evidence was insufficient to warrant the trial court's finding that the plaintiff's use of the right-of-way was open, continuous and under a claim of right during the prescriptive period. In support of this claim, the defendant contends, first, that the only evidence adduced by the plaintiff with respect to her open and continuous use during the prescriptive period was her own "vague" and uncorroborated testimony that she always had used the right-of-way during that period when returning home. The defendant maintains that, because the plaintiff failed to provide "specific information" indicating "how often or in what circumstances she used the right-of-way or that her use was continuous throughout the fifteen year period," the trial court was

left to speculate as to the nature and frequency of her use. The defendant further contends that the evidence does not support the trial court's finding that the plaintiff's use of the right-of-way was adverse to the interests of the Herbericks, the couple who owned the right-of-way during the prescriptive period. The defendant asserts, rather, that it is "far more [likely] . . . that the Herbericks permitted the plaintiff to use the right-of-way as a neighborly accommodation . . . ."

With respect to the defendant's first contention, we disagree that the plaintiff's testimony was inadequate to support the trial court's finding that her use of the right-of-way was open and continuous during the prescriptive period because that testimony was not sufficiently specific with respect to nature and frequency of her use. It is axiomatic that, in determining whether a prescriptive easement has vested, the nature of the easement will dictate the type of evidence that is required to prove it. Cf. *Missionary Society of the Diocese of Connecticut* v. *Coutu*, 134 Conn. 576, 584, 59 A.2d 732 (1948) ("[t]he circumstances of this class of cases are so varied, and it is so important that every circumstance should be taken into consideration, that we doubt the propriety of laying down universal and absolute rules of law as to the effect in evidence of particular facts" [internal quotation marks omitted]). In the present case, the plaintiff claimed a right to travel over a paved right-of-way located at the end of her driveway that leads to the nearest public road. In light of the nature of the right-of-way and its location in relation to the plaintiff's home, her testimony concerning the regular and uninterrupted nature of her use of the right-of-way from the time that she moved into her home until shortly before the commencement of this action—testimony that the trial court found to be highly credible—was sufficient to satisfy her burden of demon-

strating that she used the right-of-way in an open and continuous manner during the prescriptive period.

We also disagree with the defendant's contention that the plaintiff's proof was deficient because her testimony was not corroborated. "The credibility of a witness is a matter for the [trier of fact] and, except in rare instances, there is no requirement that a [witness'] testimony be corroborated by other evidence. . . . The absence of corroboration, of course, may affect the trier's decision as to the sufficiency of the evidence and the burden of proof . . . but this factor goes to the weight of the claimant's case rather than to his or her ability to bring the case before the trier. We see no reason why the traditional tests of credibility, testimony under oath and cross-examination, coupled with the claimant's burden of proof, are insufficient to measure the accuracy and reliability of testimonial evidence concerning [material facts]." (Citations omitted; internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 647–48, 904 A.2d 149 (2006); accord *Keystone Ins. Co.* v. *Raffile*, 225 Conn. 223, 235–36, 622 A.2d 564 (1993); see also *State* v. *Sanchez*, 204 Conn. 472, 478, 528 A.2d 373 (1987) ("the ultimate measure of testimonial worth is quality and not quantity" [internal quotation marks omitted]).

In the present case, the trial court expressly found that the plaintiff's testimony regarding her use of the right-of-way was "highly probative and credible" and, therefore, entitled to "great weight . . . ." It is well established that "[j]udgments pertaining to the resolution of conflicting factual claims lie within the province of the trial court. . . . It is familiar law that [it is] for the trial court to weigh the evidence and [to] determine the credibility of the witnesses. This court cannot and will not weigh the evidence contained in the record before us. . . . If there is sufficient evidence in the

record in support of the decision of the trial court such decision must be affirmed. . . .

"We [therefore] cannot second-guess the trial court's assessment of the credibility of the witnesses . . . . It is the trial court [that] had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge the credibility of the witnesses and to draw necessary inferences therefrom." (Internal quotation marks omitted.) *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 507, 646 A.2d 1289 (1994). Our review of the record discloses no basis for disturbing the considered factual findings of the trial court, including its credibility determinations.

We note, moreover, that, as the trial court found, and contrary to the defendant's claim, the plaintiff's testimony concerning the use of the right-of-way was, in fact, corroborated by the plaintiff's nephew, Tjader, who visited the plaintiff often during the prescriptive period and lived with the plaintiff for several years, and by several of the plaintiff's neighbors. To the extent that their testimony was predicated on observations and conduct occurring subsequent to 1974, that fact alone does not diminish the probative force of that testimony, for the trial court reasonably could have concluded that the use of the right-of-way at that later time was merely a continuation of the use that began in 1959. "[C]ourts must necessarily rely, in many cases, [on] circumstantial evidence. They are entitled to draw reasonable and logical inferences from facts existing prior to or subsequent to an event for the purpose of reaching a conclusion of fact." *Fandiller* v. *Peluso*, 139 Conn. 225, 228, 92 A.2d 734 (1952); accord *Shaughnessy* v. *Morrison*, 116 Conn. 661, 664, 165 A. 553 (1933). "Indeed, we have stated previously that [t]here is no distinction between direct and circumstantial evidence [insofar] as probative force is concerned . . . . In fact, circumstantial evidence may be more certain, satisfying

and persuasive than direct evidence." (Internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 834, 955 A.2d 15 (2008). The trial court, therefore, was entitled to conclude that the use of the right-of-way after 1974 was probative of its use prior to that time.

In addition to the testimony of the plaintiff's nephew and neighbors, the trial court also relied on the site plan and photographic exhibits of the plaintiff's property. These exhibits clearly depict a driveway that was designed and constructed with two points of entry, one from Runkenhage Road and one from the right-of-way on the defendant's property. As the trial court found, the planitiff's driveway extended five feet onto the defendant's property. Furthermore, the driveway was clearly delineated, uniformly covered in crushed stone and plainly visible from the defendant's front yard. The court reasonably considered these physical attributes, together with the nature and character of the right-of-way, to be persuasive evidence supporting the plaintiff's testimony that she had used the right-of-way in the manner and for the very purpose depicted in the site plan, that is, for ingress to and egress from her residence.[6] See *Phillips* v. *Bonadies*, 105 Conn. 722, 727–28, 136 A. 684 (1927) (design and construction of building

---

[6] We reject the defendant's assertion that the 1959 site plan is not probative of the plaintiff's use of the right-of-way during the prescriptive period because "the plaintiff testified that the site plan was never executed and the connection [to the right-of-way] was never constructed." The plaintiff testified that, during construction of her driveway, the location of the intersection between the driveway and the right-of-way was altered to enable the plaintiff to drive directly into her garage from the right-of-way. Contrary to the defendant's contention, the relocation of the point of intersection between the plaintiff's driveway and the right-of-way so that it aligned more squarely with the plaintiff's garage reinforces rather than undermines the plaintiff's testimony regarding her use of the right-of-way as a means of ingress to and egress from her garage. Furthermore, there is a note at the bottom of the site plan indicating that the "exact location of residence and entrance drive to be determined as directed . . . ." Thus, the site plan filed with the Darien building department was intended to preserve the plaintiff's right to change the exact location of the proposed improvements, and that

so as to facilitate access to disputed yard supported trial court's finding that plaintiffs' use of yard was adverse to owners' interests); see also *Klein* v. *DeRosa*, supra, 137 Conn. 588–89 (physical conditions in existence when defendants acquired their land were sufficient to put them on notice that plaintiff's use of right-of-way was adverse and under claim of right).

The defendant also claims that there were insufficient subordinate facts in the record to support the trial court's finding that the plaintiff's use of the right-of-way was adverse to the interests of the Herbericks, the couple who owned the property on which the right-of-way was situated during the prescriptive period. In particular, the defendant maintains that, because the plaintiff did not specifically mention the Herbericks in her testimony, and because no other evidence about them was adduced at trial, the trial court could not determine whether the plaintiff's use of the right-of-way was adverse to their interests, or whether, instead, they had given the plaintiff permission to use it. We are not persuaded by the defendant's contention.

As we previously explained, the party claiming a prescriptive use may demonstrate that use by credible and probative circumstantial evidence. Moreover, the fact finder's determination that the servient estate was used under a claim of right will be sustained unless that determination is manifestly unsupportable. See *Gregory's, Inc.* v. *Baltim*, supra, 142 Conn. 300. "[A]dverse use or adversity simply refers to the requirement that the easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land and that such claim must be known to, and acquiesced in by the owner of the land. . . . Given that definition, it logically follows

is what appears to have occurred with respect to the location of the plaintiff's driveway.

that adverse use or adversity will, in most instances, be proven from the same evidence by which [the] easement claimant establishes his open, notorious, exclusive, continuous and uninterrupted . . . use of the easement for the full statutory period."[7] (Citation omitted.) *Warnack* v. *Coneen Family Trust*, 266 Mont. 203, 216,

[7] We note that "[t]he question whether a use was adverse, made pursuant to an implied servitude, or permissive, in the inception is often difficult to answer, particularly in cases of long-established uses where the original parties are not available to describe the circumstances of the initial use. Courts have developed a series of presumptions to assist in determining whether the use was permissive or prescriptive. . . .

"The majority of American states apply a presumption that an unexplained, open or notorious use of land, continued for the prescriptive period, is adverse, or made pursuant to an implied servitude. This presumption of prescriptive use gives effect to the idea that long-continued uses create expectations of entitlement and favors existing users over newcomers who would disrupt established neighborhood patterns of land use and access." 1 Restatement (Third), Property, Servitudes § 2.16, comment (g), p. 233 (2000); see also 4 R. Powell, Real Property (2008) § 34.10 [2] [c], pp. 34-93 through 34-94 ("proof that a particular use of another's land has in fact occurred normally justifies . . . a finding that the use has been adverse until this presumption or strong inference is challenged by rebutting evidence"). Despite language in some of our cases suggesting that we approve of such a presumption; see, e.g., *Aksomitas* v. *South End Realty Co.*, 136 Conn. 277, 283, 70 A.2d 552 (1949) ("[u]nder the circumstances, there is a presumption that the holder of the legal title has acquiesced, and no specific finding of acquiescence is necessary"); *Horowitz* v. *F. E. Spencer Co.*, 132 Conn. 373, 376, 44 A.2d 702 (1945) ("[a] continued, open and visible use of property gives rise to a presumption that the holder of the legal title has acquiesced, particularly [when] he makes no objection"); *School District No. 8* v. *Lynch*, 33 Conn. 330, 334 (1866) ("[t]he law designs that the owner shall have ample knowledge on the subject, and a full opportunity to assert his claim, but if he sleeps upon his rights for a period of fifteen years he is presumed to have acquiesced in the claims of another"); courts in this state look to the facts and circumstances of the particular case rather than relying on a presumption of adversity. Nevertheless, we long have held that evidence of the open and notorious use of property during the prescriptive period will support an inference that the use was adverse. See, e.g., *Horowitz* v. *F. E. Spencer Co.*, supra, 376–77 (open and continuous use of property supported finding that use was adverse); see also *Bradley's Fish Co.* v. *Dudley*, 37 Conn. 136, 146 (1870) (element of adversity may be established by facts demonstrating open and continuous use); *School District No. 8* v. *Lynch*, supra, 334 (same).

879 P.2d 715 (1994). In the present case, the trial court reasonably could have inferred that the Herbericks had not given the plaintiff permission to use the right-of-way by virtue of the fact that the record is devoid of any indication that such permission had been given.

Moreover, "[i]t is not the plaintiff's burden to establish that an otherwise apparently adverse use of the defendant's property was conducted without the defendant's permission or license. . . . When the defendant raises permission by way of a special or affirmative defense, the burden of proof rests on the defendant . . . who must prove the special defense by a fair preponderance of the evidence."[8] (Citations omitted.) *Zabaneh* v. *Dan Beard Associates, LLC,* 105 Conn. App. 134, 139–40, 937 A.2d 706, cert. denied, 286 Conn. 916, 945 A.2d 979 (2008). Indeed, a contrary rule would unfairly "charge a party with proving a negative." *Lisiewski* v. *Seidel,* 72 Conn. App. 861, 873, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002).

The defendant presented no evidence to support her claim that the plaintiff's use of the right-of-way during the prescriptive period was by permission of the Herbericks, the owners of the property during that period. In contrast, the plaintiff adduced substantial evidence that her use was adverse to their interests. That evidence included the plaintiff's own testimony, which the trial court credited, that, prior to the defendant's construction of the pillars, no one ever had objected to her use of the right-of-way, and she had never sought permission from anyone to use it.[9] It is well established that

---

[8] The defendant alleged as a special defense that the plaintiff "had permission to use the right-of-way from previous owners of the property."

[9] When questioned on direct examination as to whether anyone other than the defendant had objected to her use of the right-of-way, the plaintiff replied: "Never has anybody questioned it. In fact, it wasn't even referred to . . . as the right-of-way. . . . It's just an extension of Runkenhage Road." Furthermore, in response to the question, posed on cross-examination, why she and her former husband never had sought to acquire a written

evidence that the party claiming a prescriptive use never asked for or was given permission to use the property will support a finding that the use was adverse. See, e.g., *Gallow-Mure* v. *Tomchik*, 78 Conn. App. 699, 708, 829 A.2d 8 (2003) ("[t]he essence of the determination of whether the claim to the property was made 'as of right' is . . . whether the individual claiming the prescriptive easement acknowledged the ownership rights of the landowner in any way"); id., 709 (plaintiff's testimony that she did not need permission to use right-of-way supported trial court's determination that she "used [it] as if it were her own property, which is the primary indication that the use was not permissive"); see also *McManus* v. *Roggi*, 78 Conn. App. 288, 296, 826 A.2d 1275 (2003) (plaintiff's testimony that "she never asked for permission to use" property at issue supported trial court's determination that use was adverse); *Lisiewski* v. *Seidel*, supra, 72 Conn. App. 874 (testimony that "permission [to use driveway] was never granted" supported determination that use was adverse); *DiSorbo* v. *Grand Associates One Ltd. Partnership*, 8 Conn. App. 203, 206, 512 A.2d 940 (1986) (testimony by plaintiff's husband that he used defendant's driveway "whenever he wanted to and that he never sought permission to use [it]" supported determination of adverse possession).

Furthermore, as the trial court observed in its memorandum of decision, the Wilsons and the Keatings, who reside at 8 and 12 Runkenhage Road, respectively, "have deeded access [rights] over the right-of-way" for purposes of ingress to and egress from their landlocked properties.[10] In light of this fact, the court reasonably

easement over the right-of-way, the plaintiff stated: "There was nobody to ask. There was no question of it being a right-of-way. There was just—we just normally used it. We always have, for all those years."

[10] The defendant's property at 10 Runkenhage Road and the properties located at 8 and 12 Runkenhage Road originally were part of a single parcel of land that was subdivided into separate parcels in 1928. The right-of-way was created at that time for the purpose of providing access to the rear

could have concluded that the Herbericks were not troubled by the plaintiff's use of the right-of-way for the same purposes or, if they were, that they had decided to acquiesce to such use in the interest of neighborhood harmony. See, e.g., *Phillips* v. *Bonadies*, supra, 105 Conn. 726 (passive acquiescence should not be confused with permission for purposes of determining existence of prescriptive easement); see also *Gallow-Mure* v. *Tomchik*, supra, 78 Conn. App. 708–709 (evidence supported finding that owner had passively acquiesced in plaintiff's use of property and therefore that use was adverse); 25 Am. Jur. 2d 547, Easements and Licenses § 54 (2004) ("[t]he foundation of a right by prescription is acquiescence of the owner of the servient tenement in the acts relied on to establish the easement by prescription"). In any event, in view of the trial court's extensive factual findings, all of which are amply supported by the record, the defendant cannot prevail on her claim that the evidence was insufficient to support that court's determination that the plaintiff had obtained a prescriptive easement over the right-of-way for the purposes of ingress to and egress from her home.[11]

parcels, which, without a right-of-way, would have been landlocked and not developable. The defendant's property, the parcel at 10 Runkenhage Road, was conveyed to David Moore and Marion Moore by warranty deed in 1953. The Moores' deed provided that the property was being transferred subject to the right-of-way appearing on Map No. 423, "to serve Plot No. 1 and Plot No. 2 [which are 8 Runkenhage Road and 12 Runkenhage Road, respectively], as shown on said map; said right of way to be for all lawful purposes, including the easements of public utilities, and to serve as a means of ingress and egress for each of said Plots No. 1 and No. 2 perpetually."

[11] Under the circumstances presented, we decline the defendant's invitation, raised for the first time on appeal, to overrule approximately 150 years of precedent applying the preponderance of evidence standard to prescriptive easement claims; see, e.g., *Bradley's Fish Co.* v. *Dudley*, 37 Conn. 136, 147–48 (1870); in favor of the clear and convincing evidence standard. See, e.g., *Correia* v. *Rowland*, 263 Conn. 453, 475 n.22, 820 A.2d 1009 (2003) ("[t]he burden of proof under the clear and convincing evidence standard is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the

The judgment is affirmed.

In this opinion the other justices concurred.

probability that they are true or exist is substantially greater than the probability that they are false or do not exist" [internal quotation marks omitted]). Because the trial court expressly found that the plaintiff's testimony was highly credible and persuasive, there is a strong likelihood that the court also would have concluded that the plaintiff's proof satisfied the clear and convincing standard. Moreover, although we acknowledge that the trial court would have been bound to apply the preponderance of the evidence standard in light of this court's long-standing precedent, the defendant's failure to raise the claim at trial foreclosed any possibility of a finding by the court on whether the evidence satisfied the clear and convincing standard, a finding that the court might have been willing to make for purposes of the record on appeal. In sum, we see no compelling reason to reconsider the applicability of the preponderance of the evidence standard when, as in the present case, the defendant did not raise such a claim in the trial court and the evidence of a prescriptive easement, as the trial court found, was both clear and substantial.