******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## TATAYANA OSBORN ET AL. *v.* CITY OF WATERBURY ET AL.
## (AC 39574)

Lavine, Prescott and Harper, Js.

*Syllabus*

The plaintiff mother sought to recover damages for personal injuries that her minor child, T, sustained when she was assaulted by other students during a lunchtime recess at her public elementary school. After a trial to the court, judgment was rendered in favor of the plaintiffs. The municipal defendants appealed to this court, claiming, among other things, that the trial court improperly determined, in the absence of expert testimony, that one student intern and three or four staff members were insufficient to control as many as 400 students on the playground. This court reversed the trial court's judgment, concluding that expert testimony was required to prove the standard of care necessary to determine how many adults were required to control as many as 400 students on the playground. The plaintiffs, on the granting of certification, appealed to our Supreme Court, which reversed this court's judgment and concluded that the fact finder did not need to apply scientific or specialized knowledge to determine whether the defendants adequately supervised the children in the present case, and remanded the case to this court with direction to consider the defendants' other claims on appeal. *Held* that the trial court's finding that there were as many as 400 students on the playground at the time T sustained her injuries was clearly erroneous and inextricably entwined with the court's conclusion that the defendants were negligent, constituting harmful error that required a new trial; such finding was in direct contrast to the evidence presented by school personnel, it was not supported by any other evidence and was premised on an additional clearly erroneous finding that the entire student body was released for recess simultaneously, rather than in waves.

(*One judge dissenting*)

Submitted on briefs January 6—officially released May 26, 2020

*Procedural History*

Action to recover damages for personal injuries sustained by the named plaintiff as a result of the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the action was withdrawn as to the defendants Charles Stango et al.; thereafter, the case was tried to the court, *Hon. Barbara J. Sheedy*, judge trial referee; judgment for the plaintiffs, from which the named defendant et al. appealed to this court, *Lavine, Prescott* and *Harper, Js.*; subsequently, the court, *Hon. Barbara J. Sheedy*, judge trial referee, issued an articulation of its decision, and the defendants Danielle Avalos et al. withdrew their appeal; thereafter, this court reversed the trial court's judgment, and the plaintiffs, on the granting of certification, appealed to our Supreme Court, which reversed the judgment of this court and remanded the case to this court with direction to consider the defendants' remaining claims on appeal. *Reversed*; *new trial*.

*Daniel J. Foster*, corporation counsel, filed a brief for the appellants (named defendant et al.).

*Richard M. Franchi* filed a brief for the appellees (plaintiffs).

*Opinion*

LAVINE, J. This negligence action against the defendants, the city of Waterbury (city) and the Waterbury Board of Education (board),[1] concerns the injuries that the minor plaintiff, Tatayana Osborn (child),[2] sustained during a lunchtime recess at her elementary school. This appeal returns to us on remand from our Supreme Court following its reversal of this panel's prior decision. See *Osborn* v. *Waterbury*, 333 Conn. 816, 834, 220 A.3d 1 (2019) (holding that expert testimony not necessary to determine whether "the defendants adequately supervised the children"). Our Supreme Court remanded the case to us "to consider the defendants' remaining claims on appeal." Id. Those claims are that "the trial court improperly (1) rejected [the defendants'] special defense of governmental immunity for discretionary acts, (2) concluded that the plaintiffs' injuries were caused when an inadequate number of adults were assigned to supervise up to 400 students when there was evidence that there were no more than 50 students on the playground . . . and [(3)] awarded damages intended to encourage continued therapy and occupational training for the child in the absence of evidence that she would need such services in the future." (Internal quotation marks omitted.) Id., 821–22. We agree with the defendants' second claim and, therefore, reverse the judgment of the trial court and remand the matter for a new trial.[3]

The following facts and procedural history, as set forth by our Supreme Court, are relevant to our resolution of the defendants' remaining claim. "On April 25, 2012, the child was an elementary school student when she was assaulted by other students while they were on the playground during the lunchtime recess. As a result of the assault, the child sustained a cut to her face that required sutures . . . and [that] resulted in scarring. The plaintiffs commenced the present action against the city [and] the board, [among others]. . . . In their complaint, the plaintiffs alleged, inter alia, that the plaintiffs' injuries and damages were caused by the negligence and carelessness of the defendant[s] in that [they] . . . failed to adequately supervise the children both in and out of the classroom, including the [child].

"The parties tried the case to the court. Following the presentation of evidence, the court issued a memorandum of decision in which it found that the child was a fifth grade student at Sprague Elementary School in Waterbury when she was assaulted by two or more students on the playground. The playground was surrounded by brick walls and fencing, and, following lunch, students occupied the area for play and exercise. More specifically, the child was surrounded by a circle of students who physically assaulted her and pushed her into a stone wall, causing injuries to her nose and cheek with resulting facial scarring. The child experi-

enced posttraumatic headaches for a sustained period of time, but the most serious effect of this schoolyard assault was its lingering effect on the child's emerging personality and self-image.

"The court also found that Danielle Avalos, a school paraprofessional, was assigned to monitor the students on the playground during recess. She was not provided with written documents that listed her duties during the lunchtime recess. Her two day professional development training occurred prior to the first day of school and focused on the forms of student bullying and the need to distinguish between bullying and students merely picking on other students or otherwise being unkind to them. . . .

"The trial court found that [t]here was also no evidence to suggest that only portions of the student body were released for [lunch] at a given time; it is more likely the student body ate together in the [lunch] room and then went outside for recreation—in large numbers. The trial court further found that, [a]t the time of the incident, classroom teachers were on [lunch] recess (and there was no evidence to establish that staff lunch times were staggered). The court concludes that 1 student intern and 3 or 4 staff members were not sufficient to exercise control over as many as 400 students [on the playground].

"With respect to the incident during which the child was injured, the court found that Avalos saw a student repeatedly punch the child in the face and push her into a wall. A precis prepared by the nursing division of the Waterbury Health Department referenced, a large, deep cut on the [child's] left cheek and a cut of lesser depth on the bridge of her nose. . . . The court rendered judgment in favor of the plaintiffs.

"After trial, the defendants sought an articulation from the trial court pursuant to Practice Book §§ 61-10 and 66-5. Specifically, the defendants requested that the trial court articulate (1) whether the court found either or both of the individual defendants who remain in the case to be liable for the plaintiffs' injuries and losses, and, if so, on what basis, and (2) whether the court found that the plaintiffs' injuries and losses were caused by the fact, as found by the court, that the number of adults present on the playground where the injuries took place was insufficient to exercise proper control over the number of students present.

"The trial court responded to the defendants' request for articulation as follows:

(1) This court did not find any remaining individual (specifically . . . Avalos or Donna Perreault) was liable for the plaintiffs' injuries or losses . . . . (2) This court found [that] the injuries and/or losses were as a result of the [city's] failure to exercise proper control over the number of students present. (3) The court (in

[an] August 12, 2016 ruling) found [that] the plaintiffs' injuries were caused by insufficient staffing of personnel to exercise proper control over the number of students on the playground at the time (perhaps as many as 400 students) . . . . (4) The court concluded [that] the injuries to the plaintiffs were proximately caused by an insufficient number of staff personnel—to monitor the actions of students on the playground on the date of injury. . . .

"The defendants appealed from the judgment of the trial court to the Appellate Court . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 819–21. Additional facts will be set forth as necessary.

The defendants claim on appeal that the court improperly found that the plaintiffs' injuries were caused by the fact that 1 student intern and 3 or 4 staff members were insufficient to exercise proper control over perhaps as many as 400 students. The defendants argue that the factual finding with regard to the number of students on the playground at the time the child was injured was clearly erroneous because there was no evidence that there were "perhaps as many as [400] students" on the playground. The plaintiffs counter that there was evidence of a total of 400 students in the school, and that the evidence varied as to the number of students on the playground at the time the child was injured, all of which the court could have chosen to ignore. On the basis of our careful review of the record, we are left with a firm conviction that the trial court made a mistake in finding that there were "perhaps as many as 400 students" on the playground at the time the child was injured. That conclusion, in our view, is clearly erroneous and unsupported by the facts.

We begin with the standard that governs our review of the defendants' claim. "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or *in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made.*" (Emphasis added; internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006). "As a reviewing court, [w]e cannot act as a [fact finder] or draw conclusions of facts from the primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found, thereby establishing that the trial court could reasonably conclude as it did. . . . Moreover, the fact that there is support in the record for a different conclusion [than the one reached by the court] is irrelevant at this stage in the judicial process. On appeal, we do not review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . [Instead] [w]e review the totality of the evidence, including reasonable infer-

ences therefrom, to determine whether it could support the trier's decision." (Citation omitted; internal quotation marks omitted.) *Benchmark Municipal Tax Services, Ltd.* v. *Greenwood Manor, LLC*, 194 Conn. App. 432, 441, 221 A.3d 501 (2019).

At trial, the following evidence was before the court. Donna Perreault, the principal of the school at the time of the incident, testified that there were "around probably plus or minus 400 [students]" at the school and that there were approximately twenty-five classrooms in kindergarten through fifth grade at the school. Each school day, the students ate lunch in three waves in the "caf-gym-atorium" and staff members were assigned to cover those waves. After students ate and cleared their lunch tables, they were called by table to line up at a side door to go outside for recess. There was a staff member positioned at the side door who walked them outside for recess and another staff member positioned outside waiting for the students. There were typically three or four staff members assigned to monitor the children at recess who were stationed around the playground with walkie-talkies to facilitate communication. They either watched the students or engaged the students in a game. At the end of recess, the assigned staff members had students line up and wait for their respective teachers to walk them back into the school.

Perreault testified that, on the date that the child was injured, there were no more than 150 students who had been dismissed from lunch to recess. That approximation was based on her understanding that there were three fourth grade classes and three fifth grade classes that comprised the lunch wave in question, and that each class had approximately twenty-five students. She also testified that there were four staff members assigned to cover recess at the time the child was injured. Danielle Avalos, a paraprofessional who was on recess duty and was the first staff member to respond to the incident, however, testified that she did not think that there were more than fifty students on the playground at the time of the incident. Significantly, in closing argument, counsel for the plaintiffs argued that "we know it was probably between 90 and 150 children on the playground" at the time the child was injured.

As stated previously, the court concluded in its memorandum of decision that "1 . . . student intern and 3 . . . or 4 . . . staff members were not sufficient to exercise proper control over perhaps as many as [400] students." The court further stated that "[t]here was also no evidence to suggest that only portions of the student body were released for luncheon at a given time; it is more likely that the student body ate together in the luncheon room and then went outside for recreation—in large numbers." The defendants subsequently filed a motion for articulation requesting the court to articulate, inter alia, "whether the [c]ourt found that

the [child's] injuries and losses were caused by the fact, as found by the [c]ourt, that the number of adults present on the playground where the injuries took place was insufficient to exercise proper control over the number of students present." In response, the court ruled that it "found the injuries and/or losses were as a result of the [c]ity of Waterbury's failure to exercise proper control over the number of students present"; "found the [p]laintiffs' injuries were caused by insufficient staffing of personnel to exercise proper control over the number of students on the playground at the time (perhaps as many as [400] . . . students)"; and "concluded the injuries to the [p]laintiffs were proximately caused by an insufficient number of staff personnel . . . to monitor the actions of students on the playground on the date of injury."

On the basis of our comprehensive review of the trial record, and giving due deference to the trial court, we are left with a firm conviction that the trial court made a mistake in finding that there were "perhaps as many as 400 students" on the playground at the time the child was injured. Although there was testimony that there were approximately 400 students who attended the school, there was absolutely no evidence that all of those students ate lunch together and were dismissed to recess at the same time. In fact, all of the evidence was to the contrary. As stated previously, the school had three separate lunch waves that were dismissed to recess following the lunch period. The principal of the school testified that there were approximately 150 students at recess when the child was injured and the paraprofessional who responded to the incident testified that there were no more than 50. In light of this evidence, it does not logically or reasonably follow that "perhaps as many as 400 students" were outside at recess at the time the child was injured. Moreover, even though closing argument is not evidence at trial, the plaintiffs' own counsel conceded in closing argument that "we know it was probably between 90 and 150 children on the playground." We, therefore, are left with a firm conviction that the trial court based its finding that there were "perhaps as many as 400 students" at recess on speculation that was unsupported by the evidence. The finding is thus clearly erroneous.

Our conclusion is bolstered by the fact that the trial court's finding that there were "perhaps as many as 400 students" outside at recess was premised on another clearly erroneous factual finding. The court stated in its memorandum of decision that "[t]here was also *no evidence* to suggest that only portions of the student body were released for luncheon at a given time; it is more likely that the student body ate together in the luncheon room and then went outside for recreation—in large numbers." (Emphasis added.) This finding also is clearly erroneous because there was unquestionably evidence to the contrary—namely, testimony that the

student body went to lunch and recess in three separate waves. In *In re Jacob W.*, 330 Conn. 744, 774, 200 A.3d 1091 (2019), our Supreme Court was left with a firm conviction that a mistake was made where the trial court stated that there was "no evidence" despite an abundance of evidence in the record to the contrary. We are left with a similar conviction in the present case.

We now turn to determine whether the trial court's clearly erroneous factual finding warrants reversal of the judgment rendered against the defendants. "[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Internal quotation marks omitted.) *73-75 Main Avenue, LLC* v. *PP Door Enterprise, Inc.*, 120 Conn. App. 150, 161, 991 A.2d 650 (2010).

In determining whether the court's clearly erroneous factual finding constituted harmful error, we must first acknowledge the following statements by our Supreme Court: "Unlike the defendants and the Appellate Court, we understand the trial court's response to the request for articulation, namely, that 'the injuries and/or losses were as a result of the [city's] failure to exercise proper control over the number of students present,' as a conclusion that there was inadequate supervision, not that there was solely an inadequate number of staff on the playground"; *Osborn* v. *Waterbury*, supra, 333 Conn. 822–23; "a review of the allegations of the plaintiffs' complaint, the evidence presented at trial, the transcripts of the trial, and a fair reading of the memorandum of decision and articulation in the light most favorable to sustaining the trial court's judgment demonstrate that the issue for the trial court to determine was whether the supervision was adequate, not merely whether the number of staff was sufficient"; id., 823 n.3; "[the] articulation makes clear that the supervisor to student ratio was not the *sole basis* of the trial court's conclusion that the defendants were negligent but that, regardless of the supervisor to student ratio, the defendants did not exercise proper control over the students"; (emphasis in original) id. n.4; "[t]he fact finder was not asked to determine solely the required ratio of children to staff members; instead, the question confronting the fact finder, based on the allegations in the complaint and the evidence presented at trial, was whether there was adequate supervision of the children involved in this particular incident"; id., 831; "adequacy is not based just on numbers, and nothing in the complaint limited the plaintiffs' claim to a mere numerical calculation between the number of students and the number of adults. This was an inadequate supervision case"; id., 832; and "the issue in the

present case was whether the supervision of the children was adequate when a large group of children was able to gather around the child, throwing stones at her, and with one student repeatedly punching the child in the face and pushing her into a wall." Id., 834.

Considering all of this language together as a whole, our Supreme Court determined that the trial court could have found the defendants negligent on the basis that there was an inadequate number of staff to students or on the basis that the act of supervision itself was inadequate—*or both*. It is not at all clear—in light of the convoluted trial record, including the trial court's ambiguous and internally inconsistent memorandum of decision and subsequent articulation, and the Supreme Court's reading of that record—whether the court found the defendants negligent solely on the basis of inadequacy in the act of supervision itself or on the basis of both grounds. Notwithstanding this caliginosity, however, we are still able to determine that the error was not harmless.

The trial court's memorandum of decision and its subsequent articulation repeatedly refer, both directly and indirectly, to the clearly erroneous fact that there were "perhaps as many as 400 students" on the playground, including references to the "number of students" and the "number of staff." Specifically, the only explicit finding of negligence in the trial court's memorandum of decision contained this clearly erroneous factual finding: "The court concludes that one (1) student intern and three (3)—or four (4)—staff members were not sufficient to exercise proper control over *perhaps as many as four hundred (400) students*." (Emphasis added.) Moreover, in its subsequent articulation, each of the court's three paragraphs which pertain to the court's finding of negligence contain some reference to or reliance upon this clearly erroneous factual finding: "[1] This [c]ourt found the injuries and/or losses were as a result of the [c]ity of Waterbury's failure to exercise proper control over *the number of students* present. [2] The [c]ourt . . . found the [p]laintiffs' injuries were caused by insufficient staffing of personnel to exercise proper control over *the number of students* on the playground at the time (*perhaps as many as four hundred (400) students*) . . . . [3] The [c]ourt concluded the injuries to the [p]laintiffs were proximately caused by an *insufficient number of staff personnel . . . to monitor the actions of students* on the playground on the date of injury." (Emphasis added.)

Because the trial court's clearly erroneous finding that there were "perhaps as many as 400 students" on the playground was so inextricably intertwined with the court's conclusion that the defendants were negligent, we are constrained to conclude that the court's error was harmful.[4] Moreover, our careful review of the record has undermined our confidence in the court's

fact-finding process to the point where there is no other adequate or just remedy but to order a new trial. See *73-75 Main Avenue, LLC v. PP Door Enterprise, Inc.*, supra, 120 Conn. App. 161.

The judgment is reversed and the case is remanded for a new trial.

In this opinion HARPER, J., concurred.

[1] The plaintiffs also brought this action against Stephanie Pascale, a fifth grade teacher; Charles Stango, the president of the board; Danielle Avalos, a paraprofessional at the school; and Donna Perreault, the school principal. They withdrew the action against Pascale and Stango in the trial court. In its articulation, the court clarified that it did not find that Avalos and Perreault were liable for the plaintiffs' injuries. Avalos and Perreault, therefore, did not participate in the present appeal. Any reference in this opinion to the defendants is to the city and the board.

[2] The child commenced the present action by and through her mother, Tacarra Smith. Smith also alleged that she sustained damages as a result of the child's injuries. We refer to Smith and the child as the plaintiffs.

[3] Because the defendants' second claim is dispositive of their appeal, our resolution of the present case does not depend on the other two claims. We note, however, our agreement with the dissent's resolution of the governmental immunity issue and our disagreement with the dissent's resolution of the damages issue. Specifically, unlike the dissent, we would characterize the $60,000 award as economic damages in light of the court's statement that "[i]t is this court's view the [child] would benefit from additional behavior counseling and the substantial award here determined is intended to encourage continued therapy and occupational training. . . . No evidence was offered to support an ongoing need for continued therapy in any form though the award here will permit the same should the family determine future treatment is desirable." In our view, the court abused its discretion in awarding $60,000 for future medical treatment because, in the absence of any evidence to support a reasonable likelihood that future treatment would be necessary, it was based on mere speculation. See *Calvi* v. *Agro*, 59 Conn. App. 732, 735–36, 757 A.2d 1260 (2000) ("[A]s to future medical expenses, the [trier of fact's] determination must be based upon an estimate of reasonable probabilities, not possibilities. . . . The obvious purpose of this requirement is to prevent the [trier of fact] from awarding damages for future medical expenses based merely on speculation or conjecture. . . . The evidence at trial must be sufficient to support a reasonable likelihood that future medical expenses will be necessary." (Citation omitted; internal quotation marks omitted.))

[4] We agree, of course, with the general proposition relied on by the dissent, that, as an intermediate appellate court, we are bound to follow the direction of our Supreme Court. But we differ with the dissent's conclusion as to how this general proposition applies in the present case.

Specifically, the dissent concludes that our Supreme Court reversed this court's determination that the plaintiffs' case failed as a matter of law without expert testimony on the number of teachers necessary to supervise adequately the children on two grounds, one of them being that "the plaintiffs' claim did not depend on a calculation of the ratio of the number of students to the teachers supervising them at the time the child was injured." It is on this basis that the dissent believes that the trial court's error was harmless. We, however, disagree with the dissent's characterization of our Supreme Court's decision. In our view, the Supreme Court did not state or suggest that the plaintiffs' claim did not depend *at all* on the numbers; instead it repeatedly used qualified language to state that the plaintiffs' claim was not based *solely* on the numbers. The logical conclusion to draw therefrom is that, although the plaintiffs' claim did not depend entirely on numbers, numbers were still integral to it. We, therefore, disagree with the dissent's conclusion that the trial court's error was harmless.