******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# CIRCULENT, INC. *v.* THE HATCH AND BAILEY COMPANY
## (AC 45277)

Cradle, Clark and Seeley, Js.

*Syllabus*

The plaintiff technology services provider sought to recover damages from the defendant for, inter alia, breach of contract on the basis of the defendant's alleged failure to pay amounts owed under two agreements, a managed technologies service agreement and a disaster recovery services agreement. The evidence submitted at trial included exhibit 5, a billing statement from the plaintiff to the defendant representing invoices generated by the plaintiff and payments made by the defendant, and exhibit 13, an accounts receivable from the plaintiff showing amounts unpaid by the defendant. The trial court rendered judgment for the defendant based on its findings that the defendant paid in full the amounts due to the plaintiff under the terms of the agreements. On appeal to this court, the plaintiff argued that the court erred in finding that the defendant had paid in full the amounts owed on both agreements and that the term of the disaster recovery services agreement had been one year rather than three years. *Held*:

1. The trial court's finding that the defendant tendered payments in full under the terms of the managed technologies service agreement was clearly erroneous: although the court cited to exhibits 5 and 13 in support of its finding, this court found that those exhibits demonstrated that the defendant failed to make payments through the end of the agreement, and no other evidence in the record supported the trial court's finding; moreover, a witness for the defendant testified that the defendant stopped paying the plaintiff under the agreement, and the court's conclusion that the defendant did not untimely terminate the agreement was predicated on its clearly erroneous finding that the defendant tendered payment in full under the agreement; accordingly, because this court concluded that the trial court's error was harmful, the plaintiff was entitled to a new trial on the count of the complaint alleging breach of this agreement.

2. The trial court's finding that the term of the disaster recovery services agreement was one year was clearly erroneous: record evidence, including written information on the agreement itself as well as testimony from the plaintiff's president and chief executive officer, supported the plaintiff's contention that the term of the agreement was three years, and no evidence supported the court's finding that the term was one year; moreover, evidence in the record, including exhibits 5 and 13, revealed that the defendant did not tender payments in full on the agreement during the three years following its effective date; accordingly, because the trial court's clearly erroneous findings undermined this court's confidence in the court's fact-finding process, the plaintiff was entitled to a new trial on the count of the complaint alleging breach of this agreement.

Argued November 7, 2022—officially released February 14, 2023

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the plaintiff withdrew certain counts of the complaint; thereafter, the case was tried to the court, *Jacobs, J.*; judgment for the defendant on the remaining counts of the complaint, from which the plaintiff appealed to this court. *Reversed*; *new trial*.

*John L. Cesaroni*, with whom, on the brief, was

*Aaron A. Romney*, for the appellant (plaintiff).

*Bruce L. Elstein*, for the appellee (defendant).

*Opinion*

CLARK, J. In this action for breach of contract, the plaintiff, Circulent, Inc., appeals from the judgment of the trial court rendered in favor of the defendant, The Hatch and Bailey Company. On appeal, the plaintiff claims that the court erred in finding that (1) the defendant paid in full the amounts owed to the plaintiff on the parties' managed technologies services agreement (MTS agreement), (2) the term of the parties' "Disaster Recovery-as-a-Service" agreement (DRaaS agreement) was one year rather than three years, and (3) the defendant paid in full the amounts owed on the DRaaS agreement. The plaintiff argues that, as a result of its erroneous findings, the court improperly rendered judgment in favor of the defendant as to counts one and two of the plaintiff's complaint, which alleged a breach of the DRaaS agreement and a breach of the MTS agreement, respectively. Because we conclude that the court's conclusions as to those counts rested on clearly erroneous factual findings, we reverse the judgment of the trial court and remand the case for a new trial as to those counts.

The following procedural history and facts, as found by the court in its posttrial memorandum of decision, are relevant to our resolution of the plaintiff's appeal. The plaintiff commenced this action in July, 2020, alleging that the defendant (1) breached the parties' DRaaS agreement (count 1), (2) breached the parties' MTS agreement (count 2), (3) breached the parties' "Firewall-as-a-Service" agreement (count 3), and (4) tortiously interfered with a contractual relationship (count 4).

On October 5, 2020, the defendant filed its answer, special defenses and counterclaims. As to its special defenses, the defendant alleged that (1) the liquidated damages clauses in the contracts were unenforceable, (2) the restrictive covenants in the agreements that prohibited the defendant from engaging the plaintiff's personnel also were unenforceable, (3) it paid all the sums due under the agreements, and (4) the plaintiff refused and neglected to approve a modification request in accordance with the terms of the MTS agreement. As to its counterclaims, the defendant alleged that the plaintiff violated 18 U.S.C. § 2707[1] and Connecticut's Unfair Trade Practices Act, General Statutes § 42-110a et seq.

Prior to trial, the issues to be decided were narrowed. As to count two, the plaintiff no longer pursued its allegations that the defendant materially breached the agreement by engaging the plaintiff's employees prior to the termination of the agreement. Rather, count two's focus was narrowed to the defendant's alleged early termination of the MTS agreement and its failure to pay the amounts owed on the agreement. The plaintiff

withdrew counts three and four. And the defendant's counterclaims were stricken by the court.[2]

In June, 2021, the case was tried to the court, *Jacobs, J.*, in a three day remote trial. On December 1, 2021, the court issued its memorandum of decision, finding that, "[o]n September 22, 2017, the parties entered into the written but unsigned [MTS agreement]. [Trial Exhibit 2.] Pursuant to the terms of the MTS agreement, the plaintiff was to provide technology services and numerous devices to the defendant for three years beginning on [October 16, 2017] and ending on [October 31, 2020], and the defendant was to pay a monthly fee of $3875.39 to the plaintiff for said term.

"The MTS agreement included the following provision for modification of the terms of the agreement: 'The parties agree that any modifications or additions to the Work shall be described in a written Modification of Work order to be approved or denied by [the plaintiff].' [Trial Exhibit 2.] No provision within the [MTS] agreement specified that a particular form was required to be submitted in order for the requested modification to be considered.

"On May 16, 2019, the defendant notified the plaintiff of its request to reduce the number of devices managed under the MTS agreement to one device. [Exhibit A.] The plaintiff responded by stating that, pursuant to the MTS agreement, reduction requests must be submitted by a particular form. On July 22, 2019, after the defendant submitted the form provided by the plaintiff, the plaintiff denied the request. [Trial Exhibit J.] In response to the defendant's request, the plaintiff did not provide the reasons for the denial.

"The MTS agreement also included a provision whereby, in relevant part, liquidated damages would be awarded to the plaintiff in the event of the defendant's untimely termination of the [MTS] agreement. [Exhibit 2.]

"The defendant tendered payments in full until the end of the term of the [MTS] agreement. [Trial Exhibits 5 and 13.]

"On December 19, 2017, the parties entered into the written but unsigned [DRaaS agreement]. [Trial Exhibit 1.] Pursuant to said agreement the plaintiff was to provide technology services and devices to the defendant from March 1, 2018, to February 28, 2019, and the defendant would make monthly payments of $572.93 to the plaintiff for the term of the [DRaaS] agreement.

"The DRaaS agreement included the following provision for modification of the terms of the [DRaaS] agreement: 'The parties agree that any modifications or additions to the Work shall be described in a written Modification of Work order to be approved or denied by [the plaintiff].' [Trial Exhibit 1.] No provision within the agreement specified that a particular form was required to be submitted in order for the requested

modification to be considered.

"The defendant tendered payments in full until the end of the term of the [DRaaS] agreement. [Trial Exhibits 5 and 13.]

"The DRaaS agreement included a provision whereby, in relevant part, liquidated damages would be awarded in the event of the defendant's untimely termination of the [DRaaS] agreement. [Exhibit 1.]"

In light of these findings, the court stated: "As to the allegations set forth in count one and count two of the complaint, this court concludes that the defendant performed pursuant to the terms of the two agreements, rendering payments as per the agreements. This court concludes that the defendant did not materially breach either of the two agreements. In addition, the court concludes that the defendant's conduct did not constitute untimely terminations of the agreements. The court does not address the enforceability of the liquidated damages clause as the liquidated damages clause is not activated unless, in relevant part, the defendant has terminated the agreement prior to the agreement expiration date.

"As to the allegation set forth in the first special defense, this court concludes that the liquidated damages provision is not activated, as this court has concluded that the defendant did not terminate the agreement. As to the third special defense, this court concludes that the defendant fully paid all sums set forth in the agreements.

"As to the allegations set forth in the fourth special defense, this court concludes that the plaintiff's failure to grant the defendant's reduction request does not constitute a material breach of contract. Pursuant to the modification terms of the agreements, the plaintiff had the authority to deny the request and no obligation to explain the reasons it did so." Accordingly, the court rendered judgment in favor of the defendant on counts one and two of the complaint.

On December 3, 2021, the plaintiff filed a motion to reargue, arguing, inter alia, that the court erroneously found that the defendant paid the amounts due to the plaintiff under the terms of their written agreements. The plaintiff argued that, "[b]ecause there is no evidence in the record from which the court could have made that finding, and it is clear that the court misconstrued undisputed evidence, [the plaintiff] respectfully requests that the court grant reargument and enter judgment in favor of [the plaintiff] as to counts one and two of the complaint."

The defendant filed its own motion to reargue and an objection to the plaintiff's motion to reargue. As to the court's finding that the defendant paid in full the amounts owed on the MTS agreement, the defendant conceded that "[t]he position on reargument presented

by the plaintiff is correct concerning the defendant's proof of payment . . . ." The defendant argued, however, that the court's mistake did not end the inquiry, contending that the evidence "supported that the plaintiff materially breached the MTS agreement and that the defendant did not do so." The defendant argued that the court's finding regarding the payment on the DRaaS agreement was supported by the evidence.

On January 5, 2022, the court, in a summary, one word order, denied the parties' motions to reargue. On January 6, 2022, the plaintiff filed another motion to reargue, this time directing the court to the defendant's motion to reargue, which revealed that the parties agreed that the court misinterpreted exhibits 5 and 13[3] with respect to its finding that the defendant paid in full the amounts owed under the MTS agreement. On February 1, 2022, the court denied the plaintiff's second motion to reargue in a summary, one word order. This appeal followed.[4]

We begin by setting forth the relevant legal principles governing our review of the plaintiff's claims. "[W]here the factual basis of the [trial] court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Downing* v. *Dragone*, 184 Conn. App. 565, 572, 195 A.3d 699 (2018). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *NRT New England, LLC* v. *Longo*, 207 Conn. App. 588, 600, 263 A.3d 870, cert. denied, 340 Conn. 906, 263 A.3d 821 (2021). "In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 403, 927 A.2d 832 (2007).

"[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is

required." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 197 Conn. App. 476, 485, 232 A.3d 134 (2020), cert. denied, 336 Conn. 903, 242 A.3d 1010 (2021).

I

The plaintiff first claims that the court erroneously found that the defendant paid the amounts owed on the MTS agreement in full through the end of its term and that the court's determination as to count two was predicated on this erroneous finding. The defendant concedes "that it did not prove payment of the MTS agreement" but nevertheless contends that there was "sufficient support for the court's judgment." We agree with the plaintiff.

We have reviewed the record thoroughly and conclude that the trial court's decision as to count two rests on a clearly erroneous factual finding because there is no evidence supporting the court's finding that "[t]he defendant tendered payments in full until the end of the term of the [MTS] agreement." Although the court cited to exhibits 5 and 13 in support of its finding that payments were made in full under the agreement, our review of those exhibits reveal the opposite to be true. Exhibit 5, a May 26, 2021 billing statement, contains both positive and negative values on it. It was undisputed that the positive values on the statement represented invoices generated by the plaintiff in that amount and that the negative values on the statement indicated payments made by the defendant. A simple inspection of exhibit 5 shows that the defendant ceased making its regular payments after May, 2019, rather than making payments in full through the end of the term of the MTS agreement.[5] Exhibit 13, an accounts receivable, similarly shows that there were amounts unpaid by the defendant after May, 2019. There is no other evidence in the record to support the court's finding. Indeed, the defendant's own witness, Christian Dean, the defendant's general manager and sales manager, testified that the defendant stopped paying under the MTS agreement after May, 2019.

The defendant "acknowledge[s] that it did not prove payment of the MTS agreement" but nevertheless contends that "the court's finding . . . that the defendant did not untimely terminate the MTS agreement was grounded upon the evidence." It contends that, "[a]fter considering the evidence, testimony, credibility, and a fair interpretation of what the MTS agreement provided, the conclusion that the defendant did not breach was properly rendered." The defendant's contention, however, ignores the fact that the trial court's conclusion as to count two relied exclusively on the clearly erroneous factual finding that the defendant tendered full payments to the plaintiff. Indeed, the court's memorandum of decision stated in no uncertain terms that the "defendant performed pursuant to the terms of the two agree-

ments, *rendering payments as per the agreements*" and, therefore, "the defendant did not materially breach either of the two agreements." (Emphasis added.) Immediately following these conclusions, the court went on to state in its memorandum of decision that, "[i]n addition, the court concludes that the defendant's conduct did not constitute untimely terminations of the agreements." A fair reading of the court's conclusion as to count two reveals that it was predicated on the court's clearly erroneous finding that the defendant tendered payments in full under the MTS agreement.

Because we conclude that the trial court's judgment as to count two relied exclusively on the court's clearly erroneous factual finding that the defendant "tendered payments in full until the end of the term of the [MTS] agreement," we are compelled to conclude that the court's error was harmful, requiring a new trial. See, e.g., *Osborn* v. *Waterbury*, supra, 197 Conn. App. 488 ("[b]ecause the trial court's clearly erroneous finding that there were 'perhaps as many as 400 students' on the playground was so inextricably intertwined with the court's conclusion that the defendants were negligent, we are constrained to conclude that the court's error was harmful"); *Downing* v. *Dragone*, supra, 184 Conn. App. 574–75 (new trial required because trial court's reasoning substantially relied on clearly erroneous factual finding).

II

The plaintiff next argues that the court erroneously rendered judgment in favor of the defendant on count one because the court's conclusion as to that count also rested on clearly erroneous findings. The plaintiff claims that trial court's finding that the defendant "tendered payments in full until the end of the term of the [DRaaS] agreement" was clearly erroneous because it was predicated on the court's erroneous finding that the term of the DRaaS agreement was one year, instead of three years. We agree with the plaintiff.

The court found that the term of the DRaaS agreement was one year—"the plaintiff was to provide technology services and devices to the defendant from March 1, 2018, to February 28, 2019 . . . ." Citing to exhibits 5 and 13; see footnote 3 of this opinion; the court found that "[t]he defendant tendered payments in full until the end of the term of the [DRaaS] agreement . . . ." (Citation omitted.)

In its appellee brief, the defendant acknowledges that "the parties agreed that the plaintiff would provide backup and disaster recovery services for the defendant for *three years*," as opposed to one year. (Emphasis added.) The defendant appears to argue nevertheless that the court's factual finding that the defendant fully paid the DRaaS agreement was "firmly based upon the evidence." In particular, it claims that exhibit 5 "demon-

strates payment in full of the sums claimed due under the DRaaS agreement." Pointing to four particular invoices, the defendant claims that when one compares exhibit 5 to exhibit 13, it corroborates payment in full. The plaintiff disagrees. It contends that the defendant's argument is a "misrepresentation of the record." The plaintiff argues that it is not in dispute that the defendant made a few small payments to the plaintiff on account of the DRaaS agreement after December 1, 2020. The plaintiff argues that "the uncontroverted evidence showed that the plaintiff applied those payments to the oldest outstanding invoices that the defendant had failed to pay prior to December 1, 2020, and therefore, any payments made after December 1, 2020, with respect to the DRaaS agreement were properly applied to those older invoices."

On the basis of our review of the record, we agree with the plaintiff that the court's conclusion as to count one also rested on clearly erroneous factual findings. We have found no evidence in the record that supports the court's finding that that the term of the DRaaS agreement was for one year—"from March 1, 2018, to February 28, 2019." Instead, the evidence presented supports the plaintiff's contention that the term of the DRaaS agreement was three years. Indeed, on page 8 of the DRaaS agreement, next to the field titled "Term," there is a box marked "3 years." Additionally, testimony of Marcus Lee, the plaintiff's president and CEO, confirmed that the term of the DRaaS agreement was for three years.

The court's memorandum of decision reveals that its finding that the defendant "tendered payments in full until the end of the term of the [DRaaS] agreement" and its ultimate conclusion that the defendant did not materially breach the DRaaS agreement was predicated on its erroneous finding that the term of the DRaaS agreement was one year. What is more, the plaintiff is correct in that the evidence in the record reveals that the defendant did not in fact "tender payments in full" on the DRaaS agreement during the *three years* (as opposed to the one year) following the effective date of the agreement. The trial court's clearly erroneous findings, taken as whole, undermine this court's confidence in the court's fact-finding process, requiring a new trial as to count one.[6] See *Autry* v. *Hosey*, 200 Conn. App. 795, 801, 239 A.3d 381 (2020) ("[i]f, when taken as a whole, [the clearly erroneous findings] undermine appellate confidence in the court's [fact-finding] process, a new hearing is required" (internal quotation marks omitted)).[7]

The judgment is reversed and the case is remanded for a new trial on counts one and two of the plaintiff's complaint.

In this opinion the other judges concurred.

[1] Title 18 of the United States Code, § 2707, creates a private right of

action for a knowing violation of the Stored Communications Act, 18 U.S.C. § 2701 et seq.

[2] The defendant has not challenged that decision on appeal.

[3] Exhibit 5 is a billing statement dated May 26, 2021, that reflects the amounts billed by the plaintiff and the payments made by the defendant for the time period December 31, 2018, to May 10, 2021, including amounts purported to be past due.

Exhibit 13 is an accounts receivable for the defendant dated June 21, 2021, described by Marcus Lee, the plaintiff's president and CEO, as an "aging summary," which shows the amounts owed to the plaintiff by the defendant.

[4] On February 18, 2022, after filing its appeal, the plaintiff filed a motion for articulation with the trial court, asking that it articulate "how the trial court determined that the defendant . . . paid the amounts due under the [MTS agreement] through the end of its term"; "how the trial court determined that the [DRaaS agreement] . . . expired on February 28, 2019"; and "how the trial court determined that the defendant paid the amounts due under the DRaaS agreement through the end of its term." On April 12, 2022, the trial court issued an order indicating that its memorandum of decision "references the specific exhibits on which it relied in arriving at each of its determinations," and that "its decision is neither ambiguous nor deficient."

On April 19, 2022, the plaintiff filed with this court a motion for review, asking that this court order the trial court to articulate the basis of its findings that the plaintiff set out in its motion for articulation. On June 15, 2022, this court granted review but denied the requested relief.

[5] The court found that, "[p]ursuant to the terms of the MTS agreement, the plaintiff was to provide technology services and numerous devices to the defendant for three years beginning on [October 16, 2017] and ending on [October 31, 2020], and the defendant was to pay a monthly fee of $3875.39 to the plaintiff for said term."

[6] In addition to reversing the trial court's judgment, the plaintiff invites this court to "direct the trial court to enter judgment in favor of the plaintiff." We decline its invitation because we do not have the requisite factual findings to do so. See *United Concrete Products*, *Inc.* v. *NJR Construction*, *LLC*, 207 Conn. App. 551, 565 n.17, 263 A.3d 823 (2021) ("[a] trial court's decision that 'rests on a clearly erroneous factual finding' requires a new trial").

[7] Although the defendant contends that there are alternative grounds on which to affirm the court's judgment, we decline to review them. First, none of the defendant's purported alternative grounds for affirmance were decided by the trial court. It is well known that "[o]nly in [the] most exceptional circumstances can and will this court consider [an alternative ground for affirmance] . . . that has not been raised and *decided* in the trial court." (Emphasis added; internal quotation marks omitted.) *State* v. *Juan J.*, 344 Conn. 1, 12, 276 A.3d 935 (2022). This is not an exceptional circumstance. Second, even if this court wished to decide those claims, we would be unable to do so because the trial court did not make the requisite findings necessary to decide them or because the ones that it did make are ones on which we cannot rely. See *Hartford* v. *McKeever*, 314 Conn. 255, 274, 101 A.3d 229 (2014) (Appellate Court not required to review alternative ground for affirmance "when the record was inadequate for review of the claim because the trial court had not made the requisite factual findings"); see also parts I and II of this opinion.